UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DANNY O. GOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:04CV56 CEJ |
| ) | |
| CITY OF MEXICO, MISSOURI, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's Motion for Summary Judgment. The Plaintiff has not responded, and the time allowed for doing so has expired.

**Facts**

In its Motion for Summary Judgment, Defendant has attached a Statement of Uncontroverted Material Facts. Plaintiff has failed to respond to the Defendant's motion. Under Local Rule 7-4.01, "[a]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." Therefore, the Court sets forth the following facts as presented by the Defendant in this matter:

Plaintiff and his mother, Edna Goe, were the owners of a mobile home/trailer located in Mexico, Missouri. (Pl. Complaint, ¶ 5; Goe Depo., Def. Exh. D, p. 66) Plaintiff and his mother purchased the mobile home on March 4, 1970, and title for the home was conveyed to Plaintiff upon his mother's death. (Def. Exh. D, pp. 63, 65)

On May 28, 1996, the City of Mexico adopted the provisions of the BOCA National Property Maintenance Code ("Building Code"), in Ordinance No. 3682. (Def. Exh. C, City Building Code; Aff. Tanna Parish, Def. Exh. E) Under § 107, when a code official determines that a violation of the

code exists, notice is given to the owner or person responsible for the property. The notice is in writing and includes: a description of the real estate; a statement for the reason why the notice is being issued; and a correction order to allow a reasonable time for repairs and improvements to bring the structure into compliance with the code. Further, the notice is properly served by either delivering to the owner personally or sending by certified mail to the owner with return receipt requested. (Def. Exh. C, p. 7, §§ 107.1, 107.2, 107.3) In addition, if the structure has been condemned because it is unsafe, unfit for human occupancy, or unlawful, notice shall be posted in a conspicuous place in or about the structure. (Def. Exh. C, p. 7, §§ 108.1, 108.3) A person affected by the decision of a code official has the right to appeal to the board of appeals within 20 days after service of the notice. (Def. Exh. C, p. 8, § 111.1) The City of Mexico, Missouri had in place a full board of appeals with each passing of the BOCA code. (Def. Exh. E, p. 1)

In a letter dated May 6, 1998, Plaintiff and his mother received the first of six notices regarding an unsafe structure from Defendant. (Def. Exh. B; Def. Exh. D, p. 68) The letter noted code violations for the mobile home and gave the owner five days to allow a complete inspection and submit an acceptable schedule for correcting the violations. (Def. Exh. B, pp. 2-5; Def. Exh. D, p. 68) Plaintiff received the second notice letter dated May 20, 1998, which included a deficiency statement with the results of the inspection and requested a schedule of completion for correcting the code violations by June 1, 1998. (Def. Exh. B, pp. 6-9; Def. Exh. D, pp. 69-71) Plaintiff did not provide the requested schedule of completion. (Def. Exh. D, p. 71) Instead, Plaintiff's attorney requested that the inspector clarify the sections of the building code that applied to the mobile home and stated that steps would be taken to remedy the violations. (Def. Exh. D, pp. 72-73)

On June 1, 1998, the City responded to Plaintiff's attorney with a revised deficiency

statement, indicating the violations of the Building Code and requesting a schedule of completion. (Def. Exh. B, pp. 11-14; Def. Exh. D, pp. 73-75) However, Plaintiff did not provide the requested schedule of completion. (Def. Exh. D, p. 75) The third notification which Plaintiff received was dated August 7, 1998. The letter indicated that, upon re-inspection, there had been no progress or response to the previous violation notice and that the mobile home had been posted as unfit for occupancy and demolition proceedings initiated. (Def. Exh. B, pp. 15-16; Def. Exh. D, pp. 75-79) In his deposition, Plaintiff admitted that he did not respond to the May 20, 1998 letter; he did not provide a schedule indicating that he would repair the code violations; and the City posted the mobile home as unfit for occupancy. (Def. Exh. D, pp. 77-79)

On March 25, 1999, Plaintiff received a fourth notice from the City which stated that the code violations were still incomplete and that a re-inspection on January 20, 1999 revealed that several code violations still existed on the property. (Def. Exh. B, pp. 17-18) The letter also notified Plaintiff that the City would remove the structure within 30 days. (Def. Exh. B, p. 17) Plaintiff was present during the re-inspection, and he acknowledged receiving the notices that the trailer would be demolished if he did not repair the code violations. (Def. Exh. D, pp. 86, 93)

Plaintiff received a fifth notice from the City dated April 6, 1999, listing nine code violations that still existed on the property. (Def. Exh. B, p. 19) The letter further stated that the City would remove the structure within 30 days of the March 25, 1999 notice. (Def. Exh. B, p. 19) Plaintiff admitted that he received said notification. (Def. Exh. D, p. 93) Plaintiff consulted with his attorney subsequent to receiving the letter, and his attorney informed Plaintiff that he and his mother could file for a hearing. (Def. Exh. D, pp. 93-94) Plaintiff, however, decided not to request a hearing. (Def. Exh. D, pp. 94-95)

3

On November 23, 1999, the City sent a sixth notice letter stating that the violations were still incomplete and that the City would proceed with the demolition or removal of the structure without further written notification. (Def. Exh. B, p. 21) Plaintiff acknowledged receiving the letter and that there still existed building code violations at that time. (Def. Exh. B, pp. 95-97, 103-105) While Plaintiff knew of his right to appeal the code violations, he did not appeal because his attorney mentioned that the City wanted the trailers out of the City and because Plaintiff believed that the city officials were dishonest and prejudiced against Plaintiff. (Def. Exh. D, pp. 34, 36-39)

On December 4, 1999, the City removed Plaintiff's mobile home. (Complaint, ¶ 8) Plaintiff then filed a complaint in state court, alleging that the City removed the mobile home without permission and without due process of law. Goe v. City of Mexico, 64 S.W.3d 836, 837 (Mo. App. 2001). The trial court dismissed the case for failure to state a claim, but the Missouri Court of Appeals reversed and remanded because the City's demolition ordinance did not comply with Mo. Rev. Stat. § 67.410 which required an automatic full evidentiary hearing. Id. at 840-841. Therefore, the Missouri Court of Appeals held that the ordinance pertaining to demolition was invalid. Id. At the time of the demolition, the City had no knowledge that the ordinance was invalid. (Def. Exh. E, ¶ 5)

Plaintiff voluntarily dismissed his case in state court on or about August 7, 2002 and then filed suit in federal court on August 25, 2004. (Def. Exh. G; Plaintiff's Complaint) In his Complaint, Plaintiff alleges that the Defendant violated 42 U.S.C. § 1983 by destroying the mobile home without adequate due process of law and denying Plaintiff equal protection under the law. (Complaint, p.3) Specifically, Plaintiff claims that the City denied his right to due process of law by wilfully destroying his property without notice or a hearing of any kind, contrary to Missouri law and the Constitution.

(Complaint, ¶¶ 18, 20) Further, he maintains that the City denied him equal protection by leaving properties in worse condition untouched, thereby treating Plaintiff in a manner that was substantially different from similarly situated property owners. (Complaint, ¶ 19)

**Standard for Ruling on Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action'." Celotex, 477 U.S. at 327 (1986) (quoting Fed. R. Civ. P. 1).

The initial burden of proof is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith

5

Radio Corp., 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. Anderson, 477 U.S. at 249; Celotex, 477 U.S. at 324. "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

**Discussion**

Defendant City first argues that the Building Code provided Plaintiff with adequate notice and an opportunity to be heard as required by the United States Constitution. The Court agrees with Defendant and finds that summary judgment is appropriate on Plaintiff's due process claim.

"To establish a procedural due process violation, a plaintiff must demonstrate that he has a protected property or liberty interest at stake and that he was deprived of that interest without due process of law." Hopkins v. Saunders, 199 F.3d 968, 975 (8th Cir. 1999); see also Swipies v. Kofka, 419 F.3d 709, 715 (8th Cir. 2005). Further, due process guarantees an individual subject to such deprivation "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). The Eighth Circuit Court of Appeals has held that "where a property owner is given written notice to abate a hazard on his or her property and has been given an opportunity to appear before the proper municipal body considering condemnation of the property, no due process violation occurs when the municipality abates the nuisance pursuant to the condemnation notice." Samuels v. Meriwether, 94 F.3d 1163, 1166-1167 (8th Cir. 1996) (citation omitted).

In the instant case, Plaintiff asserts that he had a constitutionally protected property interest in the mobile home at issue and that Defendant destroyed the home without due process of law. However, by Plaintiff's own admission, the City sent, and Plaintiff received, six written letters

6

notifying Plaintiff of the various code violations and requesting that he remedy the violations in order to avoid demolition of the property as required by the Building Code. (Def. Exh. B; Def. Exh. C, § 107.0; Def. Exh. D) Further, the Building Code provided a means of appeal to "[a]ny person affected by a decision of the code official or a notice order issued under this code . . ." (Def. Exh. C, Building Code § 111.1) Plaintiff acknowledged that he knew of his right to appeal and testified that he chose not to pursue this right. (Def. Exh. D, pp. 94-95) The Court therefore finds that the actions taken by Defendant City of Mexico, Missouri provided adequate notice and opportunity to be heard in compliance with procedural due process requirements under the United States Constitution. Therefore, summary judgment on this issue is warranted, as there is no genuine issue of material fact to submit to a jury on Plaintiff's due process claim.[1]

Similarly, the Plaintiff has failed to demonstrate that the City violated his right to equal protection under the Fourteenth Amendment to the Constitution. The Equal Protection Clause requires that "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City

---

[1] The Court is aware that the Missouri Court of Appeals invalidated the City's demolition ordinance for failure to comply with Mo. Rev. Stat. § 67.410 because it did not require a full evidentiary hearing. Goe v. City of Mexico, 64 S.W.2d 836, 841 (Mo. App. 2001). The Goe court's decision rested on the failure to comply with state law and did not address due process under federal law. "Due process does not, of course, require that [a party] in every civil case actually have a hearing on the merits." Boddie v. Connecticut, 410 U.S. 371, 378 (1971). Instead, it requires an opportunity to be heard. Id. In addition, the Eighth Circuit Court of Appeals has noted that "state-law error, no matter how fundamental, cannot in and of itself create a federal due-process violation." Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1105 (8th Cir. 1992) (citations omitted). Thus, the Court finds that the state court's invalidation of the Building Code provision for non-compliance with state law did not render the Building Code's demolition ordinance unconstitutional. At the time the City enforced the code, the code provided adequate notice and means to be heard as required by the due process clause of the Constitution.

of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). A party raising an equal protection violation must establish that he was treated differently than others similarly situated. Anderson v. Douglas County, 4 F.3d 574, 577 (8th Cir. 1993). In the instant case, Plaintiff must demonstrate that the City intentionally treated him different from other, similarly situated property owners. Barstad v. Murray County, 420 F.3d 880, 885 (8th Cir. 2005). However, other than the bald assertions contained in the Complaint, Plaintiff has failed to present any evidence that similarly situated property owners received favorable treatment over him. Indeed, according to the City Manager of the City of Mexico, Missouri, the City applied the BOCA National Property Maintenance Code to treat all individuals the same in any situation and that "[t]he City has never treated any other owner of an existing structure differently than the Plaintiff was treated in this case." (Def. Exh. E, ¶¶ 6, 9) Plaintiff has provided no evidence to refute these facts. Therefore, Defendant is entitled to summary judgment on Plaintiff's equal protection claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. #21] is **GRANTED.** An appropriate judgment will accompany this Memorandum and Order.

UNITED STATES DISTRICT JUDGE

Dated this 18th day of November, 2005.